**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KARL ARKADIE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **VS.** | § | **C.A. NO. 4:24-CV-1011** |
| | § | |
| **OCCIDENTAL PETROLEUM CORP.** | § | |
| **AND THIRD COAST** | § | |
| **INFRASTRUCTURE, LLC** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S FIRST SUPPLEMENTAL DESIGNATION OF EXPERT WITNESSES**
**LIST**

Plaintiff, Karl Arkadie, hereby serves this Designation of Expert Witnesses in accordance with the Court's scheduling order and the Federal Rules of Civil Procedure as notice that he intends to call the following witnesses at the time of trial to provide expert testimony in this case:

I.

Plaintiff hereby designates all other adverse parties, potentially adverse parties, and/or witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial. In the event a present or future party designates an expert but then is dismissed for any reason from the suit or fails to call any designated expert, Plaintiff reserves the right to designate and/or call any such party or any such experts previously designated by any party.

II.

The individuals identified below provided health care to Plaintiff and may be called as fact and expert witnesses to express opinions regarding their examination, diagnosis, care, and treatment of Plaintiff, her medical and physical condition, prognosis, damages and proximate causation of any injuries to Plaintiff within their areas of expertise.  They may also express any opinions contained in their medical records and depositions, if any.  The testimony of these physicians, nurses, and other health care providers may include, but will not be limited to, the following subject matters: Plaintiff's condition and prognosis prior to the conduct in question; proximate causation issues regarding Plaintiff's injuries that is the subject of this case; Plaintiff's physical limitations, the significance of any of their findings, diagnoses, studies/tests and any matter contained in Plaintiff's medical records and/or depositions.  A description of the substance of the testimony concerning such witnesses is largely accessible to Defendants through Plaintiff's medical records and any witness depositions that may be taken.  To the extent any of these health care providers provide reports at the request of Plaintiff, they will be provided, but there are none at this time other than those contained in their records and/or depositions.  Additional elaboration on the opinions held by and the facts known to such witnesses may be obtained through their depositions and Plaintiff reserves the right to elicit, at the time of trial, any such information from any of the depositions that are taken of such persons.

Any individuals (whose names may be unknown to Plaintiff at this time) who are custodians for specific records and information requested in discovery may be called upon to testify as to the authenticity of said records and that they meet the business records exception to the hearsay rule for purposes of admissibility at trial.

The following non-retained physicians and medical facilities have knowledge of Plaintiff's injuries and medical treatment and may be called upon to give expert testimony.  They have

provided care and treatment to Plaintiff.  As such, they possess expertise and knowledge in their respective area.  Specifically, they may testify about care, treatment, diagnosis, prognosis, causation, physical and work restrictions, reasonable costs for medical care in the past and future, and the need, if any, for future treatment.  Their mental impressions and opinions may be found in Plaintiff's medical and billing records and their deposition testimony, if any.  The custodians of records for these medical providers will provide testimony necessary to prove up the medical and billing records.

**Bruce Hurley, MD**
**Amanda Ritchie, MD**
**Brian Helbig, MD**
**Anna Busija, MD**
**John Lindsey, MD**
**Alexandros Flaris, MD**
**Garrett Williams, MD**
**All Medical Providers and/or Custodian of Records**
**University Medical Center**
**2000 Canal Street**
**New Orleans, Louisiana 70112**
**Tel. 504-702-3000**
*Plaintiff's healthcare provider*

This provider is a full-care, general, adult hospital that includes emergency and surgical departments. This medical provider and its physicians and associated medical providers provided Plaintiff with care as result of injuries sustained in the accident.  Individuals from this facility will testify regarding Plaintiff's medical examination, review of imaging studies, medical diagnoses, treatments provided, causation of Plaintiff's injuries, the usual and customary cost of the treatment provided, Plaintiff's prognosis, and physical and work restrictions. They will offer opinions regarding the past, present, and future care needed to treat Plaintiff. Their opinions are based on examination of the Plaintiff, education, experience, training, and the literature in their field. This provider, its physicians and associated medical providers as well as the Custodian of Records are a non-retained expert witnesses and further elaboration of expert opinions may be obtained by deposition or by review of medical and billing records, which will be produced. They reserve the right to respond to testimony from fact and/or expert witnesses and to address any area of inquiry raised in deposition or at trial.

The Custodian of Records will authenticate the records and/or testify regarding the reasonableness and necessity of the medical charges.

**Jonathan Coll, MD**

**P. Pearsall, MD**
**All Medical Providers and/or Custodian of Records**
**Ascent Emergency Medical Center**
**2280 Holcombe Boulevard**
**Houston, Texas 77030**
**Tel. 713-574-1166**
*Plaintiff's healthcare provider*

This medical provider and its physicians and associated individuals specialize in emergency care, working alongside specially trained nursing and ancillary staff with extensive experience in emergency care. They provided medical care to Plaintiff as result of injuries sustained in the accident. They will testify regarding Plaintiff's medical condition, review of imaging studies, treatment or studies performed, the usual and customary charges of same, along with potential causes of Plaintiff's conditions. Their opinions are based on their education, experience, training and literature within their field. This medical provider and its physicians and associated individuals as well as the Custodian of Records are non-retained expert witnesses and further elaboration of expert opinions may be obtained by deposition or by review of medical and billing records, which will be produced. They reserve the right to respond to testimony from fact and/or expert witnesses and to address any area of inquiry raised in deposition or at trial.

The Custodian of Records will authenticate the records and/or testify regarding the reasonableness and necessity of the medical charges.

**Chaitanya Bonda, MD**
**Heng-Hsiao Edward Liu, MD**
**All Medical Providers and/or Custodian of Records**
**Lonestar Neurology**
**945 Stockton Drive, Suite 5100**
**Allen, Texas 75013**
**Tel. 214-619-1910**
*Plaintiff's healthcare provider*

This facility, its physicians and doctors, and associated medical providers specialize in neurologic and spinal injuries and they have provided medical treatment to Plaintiff. They will opine that Plaintiff suffered injuries as a result of the subject accident based on a review of Plaintiff's medical history, his clinical examinations, Plaintiff's subjective complaints, and the circumstances surrounding which Plaintiff sought medical treatment. They will offer opinions regarding prognosis, the reasonableness, medical necessity and charges of Plaintiff's care to date, the necessity and the potential need and cost of Plaintiff's annual and lifetime long-term medical care, including long-term pain management, supportive care, and any potential work restrictions for Plaintiff. They will testify regarding matters contained in records and depositions. This testimony will include their observations, diagnosis, opinions, prognosis, facts, physical and clinical examinations, and tests done, reviewed or relied upon. This includes opinions regarding Plaintiff's pain, mental anguish, medical care, medical expenses, limitations, disfigurement, physical impairment, wage earning capacity, surgery, or any other medical issue in this case. These physicians and Custodian of Records may also testify regarding the reasonableness and necessity

of the medical charges and treatment, and they may authenticate the medical charges. These individuals' opinions are based on education, training and experience, the literature within the field of practice, and examination and treatment of Plaintiff.

These doctors, associated individuals and the Custodian of Records are non-retained experts and further elaboration of their opinions may be obtained by deposition or review of records, which will be or have been produced.

The Custodian of Records will authenticate the records and/or testify regarding the reasonableness and necessity of the medical charges.

**Lorenzo Farolan, MD**
**All Medical Providers and/or Custodian of Records**
**Memorial MRI**
**12840 Hilcrest Plaza, Suite E100**
**Dallas, Texas 75230**
**Tel. 214-341-8770**
*Plaintiff's healthcare provider*

This facility, its physicians and doctors, and associated medical providers specialize in reading and interpreting diagnostic studies including but not limited to MRIs, X-Rays and cat-scans. They will testify regarding Plaintiff's medical conditions, review of imaging studies, treatment or studies performed, the usual and customary charges of same, along with potential causes of Plaintiff's conditions. Their opinions are based on their education, experience, training and literature within his field. This facility, its physicians and doctors, associated medical providers and the Custodian of Records are non-retained experts and further elaboration of their opinions may be obtained by deposition or review of their records, which will be supplemented if necessary.

They will testify that the Plaintiff suffered objective injuries as shown on the MRI studies. They will testify that Plaintiff suffered disc herniations and other spinal injuries shown on these objective studies.

The Custodian of Records will authenticate the records and/or testify regarding the reasonableness and necessity of the medical charges.

**Donald Baxter, MD**
**Yan Michael Li, MD**
**James Slayton, DO**
**Robert Hein, MD**
**All Medical Providers and/or Custodian of Records**
**Greater Texas Orthopedic Associates**
**10830 N Central Expressway, Suite 300**
**Dallas, Texas 75231**
**Tel. 409-600-8693**
*Plaintiff's healthcare provider*

This facility, its physicians and doctors, and associated medical providers specialize in orthopedic and spinal injuries and they have provided medical treatment to Plaintiff. They will opine that Plaintiff suffered injuries as a result of the subject accident based on a review of Plaintiff's medical history, his clinical examinations, Plaintiff's subjective complaints, and the circumstances surrounding which Plaintiff sought medical treatment. They will offer opinions regarding prognosis, the reasonableness, medical necessity and charges of Plaintiff's care to date, the necessity and the potential need and cost of Plaintiff's annual and lifetime long-term medical care, including long-term pain management, supportive care, and any potential work restrictions for Plaintiff. They will testify regarding matters contained in records and depositions. This testimony will include their observations, diagnosis, opinions, prognosis, facts, physical and clinical examinations, and tests done, reviewed or relied upon. This includes opinions regarding Plaintiff's pain, mental anguish, medical care, medical expenses, limitations, disfigurement, physical impairment, wage earning capacity, surgery, or any other medical issue in this case. These physicians and Custodian of Records may also testify regarding the reasonableness and necessity of the medical charges and treatment, and they may authenticate the medical charges. These individuals' opinions are based on education, training and experience, the literature within the field of practice, and examination and treatment of Plaintiff.

These doctors, associated individuals and the Custodian of Records are non-retained experts and further elaboration of their opinions may be obtained by deposition or review of records, which will be or have been produced.

The Custodian of Records will authenticate the records and/or testify regarding the reasonableness and necessity of the medical charges.

**Adam Locketz, MD, DABPMR, XDEA, CLCP**
**All Medical Providers and/or Custodian of Records**
**Timewise Medical**
**40929 Mirada Boulevard, Suite 514**
**San Antonio, Florida 33576**
**Tel. 651-333-9133**
*Plaintiff's healthcare provider*

Dr. Locketz is a physician board-certified in physical medicine and rehabilitation who will testify regarding the reasonableness, medical necessity and charges of Plaintiff's care to date, the necessity and cost of Plaintiff's annual and lifetime long-term medical care, supportive care and any related care, causation and Plaintiff's prognosis. It is Dr. Locketz's opinion that all medical care, supportive care, counseling and other care are necessary to help Plaintiff cope with the physical pain, mental anguish, physical disability and other harm caused by Defendant's negligence, and the duration and costs of all those items are reasonable. Dr. Locketz will also offer opinions regarding work restrictions for Plaintiff.

Specifically, Dr. Locketz will opine that Plaintiff's injuries are a direct and proximate result of an accident which occurred on or about June 24, 2022.

Dr. Locketz will opine that review of Plaintiff's medical records and diagnostic testing demonstrate the need for ongoing medical treatment of Plaintiff's injuries. Dr. Locketz will testify regarding the

charges for related medical care for Plaintiff, including, but not limited to, medication, therapy, surgery, medical devices, diagnostic testing, and any attendant care. Dr. Locketz will offer opinions regarding future medical problems that may occur as a direct and proximate result of Plaintiff's injuries. Dr. Locketz will testify regarding the medical necessity of, and charges for the medical care to treat these future medical problems, including but not limited to medication, therapy, medical devices, diagnostic testing, and any attendant care.

Dr. Locketz's opinions are based upon her review of any depositions that will be or have been taken in this case, opinions of Plaintiff's treating physicians, Defendant's discovery responses, information generated by other parties' experts, including their reports and deposition testimony; any and all evidence related to Plaintiff, including medical and billing records, and her physical examination of Plaintiff.

Dr. Locketz will also rely on her training, experience, and education. He may supplement her opinions upon review of additional materials and/or the reports or testimony of Defendant's experts and other witnesses. Additional information, including the dollar amounts of future medical expenses, are outlined in his report.

**Aaron Filler, MD, PhD, FRCA**
**All Medical Providers and/Custodian of Records**
**Texas Brain Institute**
**6808 Hornwood Drive**
**Houston, Texas 77074**
**Tel. 888-900-1824**
***Plaintiff's healthcare provider***

Dr. Aaron G. Filler, MD PHD FRCS, is a neurosurgeon, neuroimaging specialist, inventory, and neuroscientist. He is the chief of neurosurgery for the Institute of Nerve Medicine, and serves as the clinical director for the Neurography Institute. Dr. Filler is the co-inventor of magnetic resonance neurography imaging and diffusion anisotropy imaging ("DTI"). This provider and his staff have expertise in the conducting, reading, and interpreting of diagnostic studies, including, but not limited to, MRIs, DTI-MRIs, X-Rays and cat-scans. Dr. Filler will testify regarding Plaintiff's medical condition, review of imaging studies, treatment, the usual and customary charges of same, along with the causes of Plaintiff's condition along with the prognosis of same.  This will include the objective findings of a traumatic brain injury that is permanent in nature. He will also opine regarding the expenses associated with future care and the objective findings of a permanent traumatic brain injury. He will also opine about medical causation and clinical etiology of the Plaintiffs' injuries. He will also opine about Defendant's expert's opinions about traumatic brain injury and the Plaintiffs' medical health. His opinions are based on education, experience, training and literature within the field. This provider and his facility is a non-retained expert and further elaboration of their opinions may be obtained by deposition or review of his records, which will be produced.

These doctors, associated individuals and the Custodian of Records are non-retained experts and further elaboration of their opinions may be obtained by deposition or review of records, which will be or have been produced.

The Custodian of Records will authenticate the records and/or testify regarding the reasonableness and necessity of the medical charges.

**Remi Nader, MD**
**All Medical Providers and/or Custodian of Records**
**International Center for Neuroscience**
**730 N Loop, Suite A**
**Houston, Texas 77009**
**Tel. 832-932-9300**
*Plaintiff's healthcare provider*

This facility, its physicians and doctors, and associated medical providers specialize in neurologic and spinal injuries and they have provided medical treatment to Plaintiff. They will opine that Plaintiff suffered injuries as a result of the subject accident based on a review of Plaintiff's medical history, his clinical examinations, Plaintiff's subjective complaints, and the circumstances surrounding which Plaintiff sought medical treatment. They will offer opinions regarding prognosis, the reasonableness, medical necessity and charges of Plaintiff's care to date, the necessity and the potential need and cost of Plaintiff's annual and lifetime long-term medical care, including long-term pain management, supportive care, and any potential work restrictions for Plaintiff. They will testify regarding matters contained in records and depositions. This testimony will include their observations, diagnosis, opinions, prognosis, facts, physical and clinical examinations, and tests done, reviewed or relied upon. This includes opinions regarding Plaintiff's pain, mental anguish, medical care, medical expenses, limitations, disfigurement, physical impairment, wage earning capacity, surgery, or any other medical issue in this case. These physicians and Custodian of Records may also testify regarding the reasonableness and necessity of the medical charges and treatment, and they may authenticate the medical charges. These individuals' opinions are based on education, training and experience, the literature within the field of practice, and examination and treatment of Plaintiff.

These doctors, associated individuals and the Custodian of Records are non-retained experts and further elaboration of their opinions may be obtained by deposition or review of records, which will be or have been produced.

The Custodian of Records will authenticate the records and/or testify regarding the reasonableness and necessity of the medical charges.

**Robert Hein, MD**
**All Medical Providers and/or Custodian of Records**
**Complete Surgery**
**3400 IH 30, Suite 300**
**Mesquite, Texas 75150**
**Tel. 469-421-6744**
*Plaintiff's healthcare provider*

This facility is a freestanding surgery center offering a broad range of outpatient surgical procedures. These doctors and associated medical providers also specialize in reading and interpreting diagnostic

studies including but not limited to MRIs, X-Rays and cat-scans, and will testify regarding Plaintiff's medical examination, review of imaging studies, medical diagnoses, treatments provided, causation of Plaintiff's injuries, the usual and customary cost of the treatment provided, Plaintiff's prognosis, and physical and work restrictions. They will offer opinions regarding the past, present, and future care needed to treat Plaintiff. Their opinions are based on examination of the Plaintiff, education, experience, training, and the literature in their field.

The Custodian of Records will authenticate the records and/or testify regarding the reasonableness and necessity of the medical charges.

**Gregg S. Perkin, PE**
**President and Principal Mechanical Engineer**
**Engineering Partners International**
**Phone 832-644-4410**
**Plaintiff's Retained Liability Expert**

Mr. Perkin is a professional engineer with over fifty years of domestic and international experience in various energy fields.  He is a registered engineer in Texas and twelve (12) other states.  He has been providing expert testimony for over thirty-five years in areas that include energy production and off-shore operations.   His CV is attached to his report which is being produced with this supplementation.

Within his report is his required testimony list and information concerning his publications and patents.  The information he relied upon in rendering his opinions is listed in Appendix 1 to his report in addition to his education, training and experience..   The detailed opinions along with the basis for them are included in this report and are incorporated into this designation.    They include the following:

Oxy/Anadarko Defendant

1. Failed to provide and maintain a safe place of work free from recognized hazards which caused, or were likely to cause, injury or serious harm to authorized and/or affected personnel during all Operations on this Platform on June 24, 2022. As stated, Occidental furnished a Person-in-Charge on this Platform who was responsible for managing and/or ensuring all Operations were able to be conducted safely prior to, and at the time of, this incident. According to the Safe Work Permit completed and signed for these SOW Repair Operations on June 24, 2022, hazardous or stored energy was recognized by the Person in Charge or Competent Person as a hazard which could expose affected personnel to harm during the planned work that day. However, proper steps were not taken to prevent hazardous and/or stored energy from ultimately being released into a work area where authorized contractors were carrying out their job duties that day. As the Owner/Operator of this Platform during these Operations, Occidental was responsible to ensure that competent, trained, and qualified personnel were provided to conduct the required Energy Isolation Procedures in accordance with Industry Standards as well as their own established Policies and Procedures for controlling and isolating certain process systems and equipment on this Platform, which did not occur and should have occurred, prior to authorizing work that day.

2. Failed to provide an Energy Isolation Plan which included the steps/sequence, materials and means to ensure all forms of stored or hazardous energy within the affected process equipment or systems on this Platform were able to be properly identified and isolated prior to work commencing. From the testimony provided, fumes were not isolated and/or eliminated from the de-pressurized Flare Vent Piping or System before work was authorized to break-containment on the subject Pipeline. Fumes represent another form of stored or hazardous energy which should have been included in an Energy Isolation Plan and controlled using isolation steps and materials prior to allowing work being authorized to break containment on the subject Pipeline that day.

<u>Third Coast Defendant</u>

1. Failed to provide and maintain a safe place to work free from recognized hazards which are or are likely to cause injury or serious harm to all authorized and/or affected personnel during all operations on this Platform on June 24, 2022. As stated, Third Coast operated the Flare System installed on this Platform and furnished personnel with Ultimate Work Authority to manage and ensure the safety and compliance of all Operations on this Platform which were associated with the Flare System that day. Further, Third Coast issued the Safe Work Permit and was the Controlling Employer responsible for authorizing and managing the safety associated with all Operations pertaining to the Flare System, which included correcting any health or safety violations prior to work that day. From the testimony provided, fumes were recognized as a hazard during a Pre-job Safety Meeting with affected personnel prior to authorizing work to break-containment on the subject Pipeline. However, responsible Third Coast personnel failed to control the potential for hazardous fumes to exist, and/or persist, in the subject Pipeline and/or the work area around the broken-out Flange. Fume containment and/or elimination was not controlled before authorizing contractor work to commence in this area which violated Industry Standards and Best Practices as well as their own established Policies and Procedures for controlling and isolating certain process systems and equipment on this Platform, which did not occur and should have occurred, prior to authorizing work that day.

2. Failed to ensure all stored or hazardous forms of energy or materials were isolated from the subject Pipeline prior to work to prevent an explosion. As Controlling Employer of the contract work being conducted on this Platform on June 24, 2022, Third Coast personnel were responsible to verify that all forms of stored or hazardous energy had been isolated from the subject Pipeline prior to authorizing work which did not occur, and should have occurred, to prevent affected personnel authorized to work from an elevated work platform around the subject Pipeline from exposure to an un-controlled source of stored and/or hazardous energy from its CLOSED Flare System during this work.

3. Failed to enforce their own established Policies and Procedures for preparing equipment or systems for maintenance or repairs prior to authorizing contractor personnel to break containment on the CLOSED Flare Vent System it installed and operated on this Platform to ensure all hydrocarbons, toxins, and/or pyrophoric materials had been removed prior to work commencing which, should have occurred but did not occur, and which directly contributed to the existence and persistence of uncontrolled stored and/or hazardous energy in the Flare Vent System as work commenced.

4. Failed to ensure trained and/or qualified personnel were provided on this Platform to ensure that an Energy Isolation Plan with steps to control all sources of stored energy was provided and followed prior to authorizing contractor work to prevent potentially hazardous sources of energy or materials which existed within the CLOSED Flare System from exposing affected personnel during work.

5. Knew that pyrophoric materials could be in their Flare System. There was a WARNING in their Manual but did nothing to control the hazard prior to work. In this regard, Third Coast neglected to identify OXYGEN as the potential hazard and use proper control measures to limit the time the subject pipeline was open. Mr. Diaz said the subject pipeline was OPENED for 10-15 minutes with strong winds blowing across the platform. The hazard was Oxygen and Third Coast neglected to connect the dots with pyrophoric before they authorized breaking containment. Third Coast's failure to identify, eliminate. mitigate and/or control the potential for Oxygen to be introduced into a CLOSED Flare System known to contain pyrophoric materials prior to work was negligent, reckless and careless.

6. Failed to take reasonable precautions and/or implement the required safeguards within their CLOSED Flare Vent System to ensure all forms of stored energy could be isolated from affected personnel during work.

7. Failed to provide proper supervision of the authorized work to the subject Pipeline. According to the testimony, the affected personnel authorized break containment on the subject Pipeline did not have the proper components required to prevent the pipeline from being OPEN at the Flange area for any substantial amount of time. As this work involved a Third Coast System on this Platform, Third Coast should have ensured that the proper components were provided prior to work to prevent any additional, un-controlled hazards from developing during work, which did not occur and should have occurred prior to authorizing contractor work to prevent affected personnel from exposure to hazardous or stored energy that day. According to their operations safety manual, Third Coast acknowledged the potential for pyrophoric materials to exist within their Flare Vent System. However, potential exposure to pyrophoric materials were not discussed during the Pre-job Safety Meeting and/or controlled in any manner prior to work. Providing a properly sized Skillet to contract personnel to install within the Flange area on the subject Pipeline would have been a reasonable way to control the pyrophoric material hazards within the subject Pipeline.

<u>Plaintiff Arkadie</u>

1. Did not cause or contribute to the stored and/or hazardous energy which existed and was un-controlled within the subject Pipeline during authorized work on June 24, 2022. Having attended a Pre-job Safety Meeting, signed a JSA, and received Lockout/Tagout verification and work authorization from his supervisor to conduct these SOW Repair Operations on the subject Pipeline that day, it was reasonable for GIS Lead Rigger; Mr. Arkadie to believe that he and Mr. Diaz were able to work safely to break containment on the Flange in the subject Pipeline and install the Skillet blind as authorized. Mr. Arkadie was not trained or qualified to isolate stored energy from the subject Pipeline and/or verify that all forms of stored or hazardous energy had been isolated prior to work commencing. He relied on the Platform Operator to ensure these hazards were controlled in accordance with Industry Standard Best Practices and their own established Policies and

Procedures prior to authorizing work, which did not occur, and should have occurred, to prevent him from being exposed to an uncontrolled release of stored and hazardous energy during work that day which resulted in serious work-related injuries.

### III.

Plaintiff reserves the right to call undesignated rebuttal expert witnesses, whose testimony cannot reasonably be foreseen until the presentation of the evidence against Defendant.

### IV.

Plaintiff reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert who cannot be called by opposing counsel.

### V.

Plaintiff reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial that would be truthful, of benefit to the jury to determine material issues of fact, and not be violative of any existing Court Order or the Federal Rules of Procedure.

### VI.

Plaintiff reserves whatever additional rights he may have with regard to experts, pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the case law construing same, and the rulings of the trial court.

### VII.

Plaintiff also hereby designates any and all providers listed in the workers compensation documents produced or obtained in this litigation.

VIII.

Plaintiff reserves the right to supplement this designation with additional designations of expert witnesses within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence.

Dated: February 6, 2025

Respectfully submitted,

*/s/ Robert Morse*
Robert Morse
ATTORNEY-IN-CHARGE
State Bar Number: 24041529
Fed. Bar Number: 606202
DASPIT LAW FIRM, PLLC
440 Louisiana Street, Suite 1400
Houston, Texas 77002
Phone: (713) 322-4878
Fax No.: (713) 587-9086
E-mail: e-service@daspitlaw.com

**ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2025, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, and that this instrument is therefore available for viewing and downloading from the Court's ECF system.

I further certify that on February 6, 2025, pursuant to Rule 5(d) of the Federal Rules of Civil Procedure, I served a copy of the above and foregoing certificate on defendant's attorneys of record by e-mail.

*/s/Robert Morse*
**Robert Morse**